# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| **1291 BRITAIN DR PCPRE, LLC,** | ) | **CASE NO. 25-54940** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | **CASE NO.  25-54943** |
| | ) | |
| **215 PAPER MILL RD PCPRE, LLC,** | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

---

## DEBTORS' JOINT PLAN OF LIQUIDATION

---

**SCROGGINS, WILLIAMSON & RAY, P.C.**

**Ashley Reynolds Ray**
**Georgia Bar No. 601559**
**J. Hayden Kepner, Jr.**
**Georgia Bar No. 416616**
**4401 Northside Parkway**
**Suite 230**
**Atlanta, GA 30327**
**(404) 893-3880**

**Counsel for the Debtors**

**Dated: December 15, 2025**

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN, IF ANY.  THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THESE CASES, AND THE MEANS OF FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## JOINT PLAN OF LIQUIDATION

1291 Britain Drive PCPRE, LLC and 215 Paper Mill Rd PCPRE, LLC, each a debtor and debtor-in-possession in the above-styled Chapter 11 cases (each a "**Debtor**" and together, the "**Debtors**" and **"Plan Proponents")**), propose the following Debtors' Joint Plan of Liquidation (the "**Plan**"). For a discussion of the Debtors' history, businesses, assets, and for a summary and analysis of the Plan and certain related matters, all holders of claims should refer to Debtors' Disclosure Statement to Accompany Debtors' Joint Plan of Liquidation filed on December 15, 2025 (the "**Disclosure Statement**"). The Debtors are proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

All Holders of Claims against and/or Interests in the Debtors are encouraged to read this the Plan and Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject the Plan. The Plan Documents, once filed, shall be available for review in the office of the clerk of the Bankruptcy Court, or online through the Court's ECF system, www.ganb.uscourts.gov. Holders of Claims or Equity Interests may also obtain a copy of the Plan Documents by contacting counsel for the Debtors by a written request sent to the above address. Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve the right to alter, amend or modify the Plan, one or more times, before its substantial consummation.

No materials other than the Disclosure Statement and any exhibits and schedules attached to or referenced in the Disclosure Statement have been approved by the Bankruptcy Court or the Plan Proponents for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I
## DEFINED TERMS

For purposes of this Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below. Capitalized terms shall refer to the terms as defined in this Article. Unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and the masculine shall include the feminine and the feminine shall include the masculine in gender. The term "including" shall mean "including, without limitation." Any term in the Plan which is not defined below but which is used in the Bankruptcy Code, Title 11 U.S.C., shall have the meaning ascribed to it in the Bankruptcy Code.

**1.01** *"Administrative Expense Claim"* means any claim for costs and expenses of administration of either Debtors' Bankruptcy Case that is entitled to priority pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including any Professional Compensation Claim and any fees arising under 28 U.S.C. § 1930(a)(6) as a result of any disbursements made by the Debtors or the Post-Confirmation Debtors, and to the extent applicable, accrued interest

thereon arising under 31 U.S.C. § 3717. The terms "Administrative Expense(s)" and "Administrative Expense Claim(s)" may be used interchangeably in this Plan.

**1.02** *"Administrative Expense Claimant"* means the holder of an Administrative Expense Claim.

**1.03** *"Administrative Expense Claim Bar Date"* means the last day for filing an application or other Bankruptcy Court-approved pleading for allowance and/or payment of an Administrative Expense Claim other than (a) a Claim that arises pursuant to 11 U.S.C. §503(b)(9), or (b) Professional Compensation Claims. The Administrative Expense Claim Bar Date will be thirty (30) days after the Effective Date or such other date as may be established by Order of the Bankruptcy Court.

**1.04** *"Affiliate"* has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.05** *"Allowed Amount"* means the dollar amount in which a Claim is an Allowed Claim.

**1.06** *"Allowed Claim"* means a Claim or that portion of a Claim against a Debtor that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by a Debtor in its Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim) has a corresponding meaning. Notwithstanding any other provision of the Plan, the term Allowed Claim shall not include any Claim held by a Creditor against which a Debtor has asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall be reduced and not include any amount owed by the Creditor to a Debtor. An Allowed Claim shall not include any penalty or interest accrued after the Petition Date except as expressly provided in the Plan. Except as expressly provided in the Plan, to the extent that the Holder of an Allowed Claim receives any payment on such Claim from a source other than a Debtor, the amount of such Allowed Claim shall be reduced by the amount of such payment.

**1.07** *"Allowed Class ... Claim"* means an Allowed Claim in the particular Class(es) or categories described.

**1.08** *"Assets"* or *"Property"* means all property of the applicable Debtor's Estate as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions and any Causes of Action that the applicable Debtor, or its Estate may have as of the Effective Date or any time thereafter, wherever situated as such properties exist on the Effective Date or thereafter.

**1.09** *"Avoidance Actions"* means any claim or cause of action of either Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

**1.10** *"Ballot"* means each of the ballot forms that are distributed to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

**1.11** *"Ballot Date"* means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of this Plan.

**1.12** *"Bankruptcy Case(s)," "Case(s)"* or *"Chapter 11 Case(s)"* means the Chapter 11 case(s) of 1291 Britain Dr. PCPRE, LLC, Case No. 25- 54940-LRC and/or 215 Paper Mill Rd PCPRE, LLC, Case No. 25-54943-LRC, pending in the Bankruptcy Court.

**1.13** *"Bankruptcy Code"* or *"Code"* means Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to these Cases.

**1.14** *"Bankruptcy Counsel"* means Scroggins, Williamson & Ray, P.C., in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtors.

**1.15** *"Bankruptcy Court"* or *"Court"* means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over these Cases.

**1.16** *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (N.D. Ga. L.B.R.), and as in effect on the Petition Date, together with all amendments and modifications to the Bankruptcy Rules that were subsequently made applicable to the Case.

**1.17** *"Bar Date"* means November 3, 2025, the last date for the filing of Proofs of Claim and requests for payment of Administrative Expenses arising under 11 U.S.C. §503(b)(9) against either Debtor.

**1.18** *"Bar Date Order"* means the order entered by the Bankruptcy Court on September 4, 2025, establishing a Bar Date [Dkt. No. 56 (Britain Dr.)/ Dkt. No. 57 (Paper Mill)].

**1.19** *"Britain Village"* means the multifamily residential property owned by 1291 Britain Dr. PCPRE, LLC.

**1.20** *"Business Day"* means any day other than a Saturday, Sunday, or "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)) that commercial banks are open for business in Atlanta, Georgia.

**1.21** *"Carolina"* means the multifamily residential property owned by 215 Paper Mill Rd. PCPRE, LLC.

**1.22** *"Cash"* means legal tender of the United States of America. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a Cashier's check, a wire transfer of immediately available funds from any source, or a check from one or more Debtor drawn on a domestic bank.

**1.23** *"Causes of Action"* means any and all actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, of either Debtor or their Estate, including all Avoidance Actions, and any and all other Claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all Claims against any Affiliates, members, officers, directors, managers, employees or other Insiders of either Debtor or their Affiliates. Some of the Causes of Action may be described in further detail in the Disclosure Statement. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement. Causes of Action shall include, but not be limited to, those payments and other transactions identified in the Schedules. Except as expressly released under the Plan or the Confirmation Order, the Debtors will not be estopped or precluded under any theory from pursuing the Causes of Action.

**1.24** *"Claim"* means a claim against either Debtor, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

**1.25** *"Claimant"* means the holder of a Claim.

**1.26** *"Claims Litigation"* means any and all litigation or proceedings arising out of objections to Claims asserted against the Estate(s), or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate(s).

**1.27** *"Class" or "Classes"* means a category of Claims or Equity Interests classified together as described in Article III of the Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

- 6 -

**1.28** *"Clerk"* means the Clerk of the Bankruptcy Court.

**1.29** *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**1.30** *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket in each Debtor's case pursuant to Bankruptcy Rule 5003(a).

**1.31** *"Confirmation Hearing"* means the hearing(s) held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**1.32** *"Confirmation Order"* means the order entered by the Bankruptcy Court in each Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which shall be in all respects reasonably acceptable to the Debtors.

**1.33** *"Consummation Date"* means the date on which final Distributions to Creditors are made in accordance with the Plan.

**1.34** *"Contingent"* with reference to a Claim, means a Claim that has not accrued and that is dependent on a future event that may or may not occur.

**1.35** *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in the Plan.

**1.36** *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.37** *"Debtor(s)," or "Debtor(s) in Possession"* means 215 Paper Mill Rd PCPRE, LLC and/or 1291 Britain Dr PCPRE, LLC.

**1.38** *"Designated Notice"* means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the applicable Debtor and its counsel, the Office of the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for notice with the Clerk and serve a copy of such request on counsel to the Debtors and the Office of the U.S. Trustee.

**1.39** *"Disallowed Claim"* means: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Bankruptcy Court or otherwise in accordance with the Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with

the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable law.

1.40    *"Disclosure Statement"* means the Disclosure Statement to accompany the Plan, including all attached exhibits, appendices, and schedules, as filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Case and approved by the Bankruptcy Court as containing "adequate information" as that term is defined by Section 1125(a)(1) of the Bankruptcy Code, in the Disclosure Statement Approval Order, as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

1.41    *"Disclosure Statement Approval Order"* means the Order Approving Disclosure Statement entered in the Case.

1.42    *"Disputed Claim"* means

(a)    any Claim (other than a Disallowed Claim) that has not been Allowed by a Final Order of the Bankruptcy Court as to which:

(1)    a Proof of Claim has been filed with the office of the Clerk (or as otherwise directed by a Final Order) or is deemed filed under applicable law or Final Order of the Bankruptcy Court or the Claim was listed on the Schedules as not being contingent, disputed or unliquidated, and

(2)    an objection or adversary proceeding has been or may be timely filed by a party-in-interest with standing relating to such Claim or against the Holder of such claim, and any such objection or adversary proceeding has not been

(A)    withdrawn,

(B)    overruled, denied or otherwise resolved by a Final Order of the Bankruptcy Court, or

(C)    sustained by a Final Order of the Bankruptcy Court or a judgement entered against the Holder of the Claim.

1.43    *"Distribution"* means any distribution of Cash, Property, interests in Property or other value distributed under this Plan by the Post-Confirmation Debtors to a Holder of an Allowed Claim.

1.44    *"Distribution Date"* means the date of any Distribution under the Plan.  The initial Distribution Date shall occur as soon as reasonably practicable following the Effective Date, as determined by the Post-Confirmation Debtors.

1.45    *"Docket"* means the docket or dockets in the Case maintained by the Clerk.

1.46    *"Effective Date"* means the first business day after the conditions to the effectiveness of the Plan set forth in Article XIII of the Plan have been satisfied or waived (if waivable).

- 8 -

**1.47** *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.48** *"Equity Interests"* or *"Interests"* means any equity interest of a member of or shareholder in the applicable Debtor as of the Confirmation Date.

**1.49** *"Estate"* means the estate created for the Debtor under Section 541 of the Bankruptcy Code upon the commencement of the Case.

**1.50** *"Estate Assets"* means all Property in the Estate, including without limitation Cash, Causes of Action, accounts receivable, tax refunds and credits, deposits, refunds, and retainers.

**1.51** *"Estimation Hearing"* means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**1.52** *"Executory Contract"* or *"Unexpired Lease"* means a contract to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.53** *"Fannie Mae"* means Federal National Mortgage Association.

**1.54** *"Final Decree"* means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Case.

**1.55** *"Final Decree Date"* means the date on which a Final Decree has been entered closing the Case.

**1.56** *"Final Fee Application Deadline"* means the sixtieth (60th) day after the Effective Date.

**1.57** *"Final Order"* means—

(a)    an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Cases for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which:

(1)    no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

(2)    such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(b)    a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**1.58**  *"Governmental Authority"* means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

**1.59**  *"Holder"* means:

(a)    as to any Claim:

(1)    the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(2)    if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

(3)    if the owner or Holder of such Claim has transferred the Claim to a third party, advised the applicable Debtor in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(b)    as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

**1.60**  *"Impaired"* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.61**  *"Insider"* has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

**1.62**  *"Liabilities"* means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, of or relating to:  (a) either Debtor, or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to either Debtor or any predecessor, successor, or assign thereof; (b) the Property; (c) the business or operations of either Debtor; (d) the Cases; or (e) the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; <u>provided,</u>

however, that, as used in the Plan, the term "Liabilities" does not include any Postconfirmation or post Effective Date payment obligation expressly set forth and preserved in the Plan.

    **1.63** *"Lien"* has the meaning ascribed to it in section 101(37) of the Bankruptcy Code and, with respect to any asset or Property, includes any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, or otherwise. Any lien avoided in accordance with Sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

    **1.64** *"Other Priority Claims"* means any Claim, other than an Administrative Expense Claim or Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a).

    **1.65** *"Other Secured Claim"* means any Secured Claim, other than those in Classes 2A or 2B as applicable, as provided for under Section 506 of the Bankruptcy Code.

    **1.66** *"Person"* means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

    **1.67** *"Petition Date"* means May 5, 2025, the date on which each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

    **1.68** *"Plan," "the Plan,"* or *"this Plan"* means this Joint Plan of Liquidation proposed by the Debtors, dated December 15, 2025 (together with all Exhibits or Schedules to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

    **1.69** *"Plan Documents"* or *"Plan Supplement"* means all documents that aid in effectuating the Plan, all documents filed with the Bankruptcy Court at or before the Confirmation Hearing, and including the Confirmation Order.

    **1.70** *"Postconfirmation"* means arising or accruing on or after the Confirmation Date.

    **1.71** *"Post-Confirmation Debtor Expenses"* means any expenses incurred by the Post-Confirmation Debtors (including Post-Confirmation Debtor Professional Fees) in connection with converting Estate Assets to Cash or resolving objections to or litigation relating to Claims.

    **1.72** *"Post-Confirmation Debtor Professional Fees"* means fees and expenses of Professionals retained by the Post-Confirmation Debtors which are incurred in connection with converting Estate Assets to Cash or resolving objections to or litigation relating to Claims.

**1.73** *"Postpetition"* means arising or accruing on or after the Petition Date and before the Effective Date.

**1.74** *"Preconfirmation"* means arising or accruing prior to the Confirmation Date.

**1.75** *"Pre-Effective Date"* means arising or accruing prior to the Effective Date.

**1.76** *"Prepetition"* means arising or accruing prior to the Petition Date.

**1.77** *"Priority Claimant"* means the holder of a Priority Claim.

**1.78** *"Priority Non-Tax Claim"* means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.79** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**1.80** *"Professional"* means those Persons (i) retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103, and/or 1106 of the Bankruptcy Code who are to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, and/or 331 of the Bankruptcy Code, (ii) for which compensation and reimbursement is subject to allowance by the Bankruptcy Court pursuant to sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, or (iii) employed by the Debtors pursuant to this Plan.

**1.81** *"Professional Compensation Claim"* means any Claim by a Professional for compensation and/or reimbursement of expenses incurred prior to the Effective Date pursuant to 11 U.S.C. § 330, plus any fees and expenses related to the final fee application of a Professional.

**1.82** *"Proponent"* means the Debtors as the proponents of the Plan.

**1.83** *"Property"* means all of the applicable Debtor's and/or the Estate's interest in any property.

**1.84** *"Pro Rata Share"* means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes. The term *"Pro Rata Share"* will also be applied in respect of Administrative Expense Claims, Priority Tax Claims, and Priority Claims, as the context requires in the Plan.

**1.85** *"Proof of Claim"* means a proof of claim filed in this Case pursuant to Bankruptcy Rules 3001, 3002, or 3003 in accordance with various orders of the Bankruptcy Court.

**1.86** *"Reserve"* or *"Disputed Claims Reserve"* means the amount of Cash held by the applicable Debtor, following the Effective Date in reserve for amounts that are or are expected to become due and owing on or following the Effective Date, including without limitation amounts that may become payable, on account of Disputed Claims.

**1.87** *"Record Holder"* means the Holder of a Claim as of the Record Date.

**1.88** *"Post-Effective Date Debtor"* means a Debtor, on or after the Effective Date.

**1.89** *"Scheduled"* means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the applicable Debtor's Schedules.

**1.90** *"Schedules"* means, collectively, the Schedules and Statements of Financial Affairs filed by the Debtor in the Case on May 23, 2025 [Dkt. No. 34 and Dkt. No. 37], pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.91** "*Section 6621 Interest Rate*" means the rate of interest charged by the United States for delinquent tax obligations pursuant to 26 U.S.C. § 6621.

**1.92** *"Secured Claim"* means any Claim that is—

> (a)    secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

> (b)    subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (a) and (b) of this section, only to the extent of the Estate's interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.  Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim, which Claim shall be treated as set forth in Article V of the Plan.

**1.93** *"Secured Creditor"* or *"Secured Claimant"* means any Creditor holding a Secured Claim.

**1.94** *"Tax Claim"* means any Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.95** *"Taxes"* means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, sales, capital, value added, profits and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Governmental Authority or paid in connection with any item described in clause (i) hereof.

**1.96** *"Unclaimed Property"* means any funds payable to Holders of Claims which are unclaimed. Unclaimed Property shall include: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance; (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such Property; and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following at least one mailed request for this tax identification information.

**1.97** *"Unexpired Lease"* means a lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.98** *"Unimpaired Claim"* means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.99** *"United States Trustee"* means the United States Trustee for Region 21, and the Office of the United States Trustee located in Atlanta, Georgia.

**1.100** *"Unsecured Claim"* means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.101** *"Unsecured Creditor"* means any Creditor holding an Unsecured Claim.

**1.102** *"Voting Deadline"* means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject the Plan.

## ARTICLE II
### TREATMENT OF ADMINISTRATIVE
### EXPENSES AND PRIORITY TAX CLAIMS

**2.01** *Nonclassification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article II.

**2.02    *Administrative Expense Claims*.**  Except as otherwise provided below, on or before the later to occur of (i) thirty (30) days following the Administrative Expense Claim Bar Date, or (ii) ten (10) business days following the date of entry of a Final Order allowing the Claim, each Holder of an Allowed Administrative Expense Claim shall be paid in full, in Cash in an amount equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code.  Professional Compensation Claims, to the extent not already paid, shall be paid in full, in Cash, no later than three (3) Business Days after entry of a Final Order approving such Professional Compensation Claims.  Notwithstanding the foregoing, each Holder of an Allowed Administrative Expense Claim may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim and the Debtor(s), or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

**2.03    *Fees and Charges*.**  All fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date or as soon as reasonably practicable thereafter.

**2.04    *Applications for Allowance of Administrative Expenses*.**  All Holders of Administrative Expense Claims (other than Claims pursuant to 11 U.S.C. § 503(b)(9) and Professional Compensation Claims) that do not file an application or other Bankruptcy Court-approved pleading on or before the Administrative Expense Claim Bar Date, which is thirty (30) days after the Effective Date (unless such date is extended by the Bankruptcy Court), will be forever barred from asserting such Administrative Expense Claim against the Debtor(s) or the Estate(s).  Claims arising under 11 U.S.C. §503(b)(9) were required to be filed by the Bar Date, and if they were not filed by the Bar Date, they are forever barred.

**2.05    *Applications for Final Allowance of Professional Compensation Claims*.**  All Holders of Professional Compensation Claims must file with the Bankruptcy Court a final application for allowance and payment of fees and expenses on or before the Final Fee Application Deadline.  Objections to such Professional Compensation Claims, if any, must be filed and served no later than 14 days after the Final Fee Application Deadline.

**2.06    *Priority Tax Claims*.**  Each Debtor will pay all Allowed Priority Tax Claims in their respective Case in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date.  As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full.  Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance

- 15 -

as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

# ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.01    *In General.*** Pursuant to Section 1122 of the Bankruptcy Code, the Claims against and Equity Interests in the Debtors and the Property of the Debtors are classified as set forth in this Article. Within each Class of Claims and Interests below, there shall be deemed to be two (2) subclasses which relate to the Debtors as follows:

A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village
B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina

Each subclass will receive the same treatment as the other subclasses within a particular Class of Claims or Interests. Allowed Claims within each subclass shall be satisfied from assets of the Estate of the specific Debtor against whom the Holder of an Allowed Claim asserts such Claim. The rights of all Claimants, and the responsibilities of the Debtors with respect to those Claimants, shall be based upon their classification herein. A Claim or Equity Interest is classified (a) in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class. As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

**3.02    *Classes.*** The Claims of Creditors and Holders of Equity Interests under this Plan are divided into the following classes, which classes are mutually exclusive:

(a)    Class 1 shall consist of all Priority Non-Tax Claims, if any.

(b)    Class 2 shall consist of the Allowed Secured Claims of Fannie Mae.

(c)    Class 3 shall consist of all Allowed Secured Claims not included in Class 2, if any.

(d)    Class 4 shall consist of all Allowed Unsecured Claims.

(e)    Class 5 shall consist of all Allowed Equity Interests in the Debtors.

## ARTICLE IV
## IMPAIRMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01   *Impaired Classes*.**   Class 4 is impaired under the Plan and entitled to vote whether to accept or reject the Plan.

**4.02   *Unimpaired Classes*.**   Classes 1, 2, 3 and 5 are unimpaired under the Plan.  These classes are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code.

## ARTICLE V
## TREATMENT OF CLASSES UNDER THE PLAN

**5.01   *In General*.**   Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article V.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**5.02   *Unclassified Claims*.**   Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article II of the Plan.

**5.03   *Class 1: Priority Non-Tax Claims*.**   Each holder of an Allowed Priority Non-Tax Claim, if any, designated in Class 1A or 1B shall be paid as follows:

(a)  In full, in Cash, on the later of the Effective Date or, if an objection to such Claim is asserted, five business days following the date of a Final Order allowing any such Claim; or

(b)  Upon such other terms as may be agreed to between the applicable Debtor and a Holder of an Allowed Priority Non-Tax Claim.

Distributions shall be made from assets of the Estate against which the Allowed Priority-Non-Tax Claim is asserted.  Class 1 is unimpaired by the Plan.  Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

**5.04   *Class 2: Secured Claim of Fannie Mae*.**   The Allowed Secured Claims asserted by Fannie Mae in Class 2A and Class 2B shall be paid in full, with interest, as soon as practicable on or after the Effective Date.

**5.05   *Class 3: All Other Secured Claims*.**   Each Allowed Other Secured Claim in Class 3A or 3B, if any, shall be satisfied as soon as practicable on or after the Effective Date, at the applicable Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Debtor of the collateral securing such Class 3A or Class 3B Claim to the Holder of such Allowed

Secured Claim in full and final satisfaction of such Allowed Secured Claim, (ii) by the sale of the collateral securing such Allowed Secured Claim, following Designated Notice, and the payment by the Debtor to the Holder of such Allowed Secured Claim of the net sale proceeds in an amount equal to the value of such Holder's interest in the collateral in full and final satisfaction of such Allowed Secured Claim, or (iii) by payment of Cash by the Debtor to the Holder of such Allowed Secured Claim in an amount equal to the value of such holder's interest in the collateral securing the Allowed Secured Claim.  Distributions shall be made from assets of the Estate against which the Allowed Other Secured Claim is asserted.

 **5.06**  *Class 4: Allowed Unsecured Claims*.  Each Allowed Unsecured Claim in Class 4A or 4B shall receive the following treatment:

  (a)  ***Class 4A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village***- Class 4A consists of all Allowed Unsecured Claims asserted against 1291 Britain Dr. PCPRE, LLC. Each Holder of an Allowed Class 4A Claim shall receive payment in cash in an amount equal to their Allowed Claim, without interest, payable within ninety (90) days after the Effective Date, or if an objection is filed to such Claim, within five (5) business days of entry of an order Allowing such Claim.

  (b)  ***Class 4B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina***- Class 4B consists of all Allowed Unsecured Claims asserted against 215 Paper Mill Rd. PCPRE, LLC.  Each Holder of an Allowed Class 4B Claim shall receive payment in cash in an amount equal to their Allowed Claim, without interest, payable within ninety (90) days after the Effective Date, or if an objection is filed to such Claim, within five (5) business days of entry of an order Allowing such Claim.

 **5.07**  *Class 5:  Equity Interests*.  Each Allowed Equity Interest in Class 5A or 5B shall receive the following treatment:

  (a)  ***Class 5A- 1291 Britain Dr. PCPRE, LLC d/b/a Britain Village***- Class 5A consists of all Allowed Equity Interests in 1291 Britain Dr. PCPRE, LLC as of the Effective Date.  Holders of Allowed Equity Interests in Class 5A shall retain their Interests in the Debtor and shall receive distributions hereunder of all assets held by 1291 Britain Dr. PCPRE, LLC after payment of all Allowed Claims in Classes 1A through 4A and payment of any Post-Confirmation Debtor expenses.

  (b)  ***Class 5B- 215 Paper Mill Rd. PCPRE, LLC d/b/a The Carolina***- Class 5B consists of all Allowed Equity Interests in 215 Paper Mill Rd. PCPRE, LLC as of the Effective Date.  Holders of Allowed Equity Interests in Class 5B shall retain their Interests in the Debtor and shall receive distributions hereunder of all assets held by 215 Paper Mill Rd. PCPRE, LLC after payment of all Allowed Claims in Classes 1B through 4B and payment of any Post-Confirmation Debtor expenses.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION AND EXECUTION OF PLAN

**6.01** *Source of Cash for Distributions.*  The Debtors shall each sell substantially all of their assets pursuant to one or more Asset Purchase Agreements substantially in the form of Exhibits 1A (Britain Village) and 1B (The Carolina) which shall be filed as a plan supplement no later than five days prior to the hearing on the Disclosure Statement.  The aggregate Purchase Price under each Asset Purchase Agreement shall be sufficient to pay all Allowed Claims in Classes 1A through 3A or 1B through 3B, as applicable, and to make a distribution to Holders of Allowed Claims in Classes 4A and 4B, as applicable.

**6.02** *Administration of Claims.*  Following the Effective Date, the Debtors shall each complete their respective reviews of Claims and shall initiate, file and prosecute any and all actions deemed necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims. The Debtors shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to such Claims and prosecute Claims Litigation related to such claims, until such time as the Debtors determine that further pursuit of litigation or actions objecting to such Claims is no longer cost efficient, and will be of no further benefit.  **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

**6.03** *Post-Confirmation Debtor Expenses.*  Post-Confirmation Debtor Expenses, including Post-Confirmation Debtor Professional Fees, shall be paid by the applicable Post-Confirmation Debtor.

**6.04** *Preservation of Rights of Action.*  Except as otherwise expressly provided herein, any rights or Causes of Action accruing to or held by the Debtor or its Estate prior to the Effective Date shall be retained by the Post-Confirmation Debtor.  The Plan, the Disclosure Statement and Schedules do not set forth an exhaustive list of all Causes of Action preserved under the Plan and vested into the Post-Confirmation Debtor and the failure to identify or list any particular Cause of Action therein shall not constitute a waiver or release of such Cause of Action. **ALL CAUSES OF ACTIONS NOT EXPRESSLY RELEASED OR WAIVED IN THE PLAN OR THE CONFIRMATION ORDER SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CAUSES OF ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE**.

## ARTICLE VII
### LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

**7.01** *GENERAL INJUNCTION.*  **PURSUANT TO SECTIONS 105, 1123, 1129 AND 1141 OF THE BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE AND THROUGH THE CONSUMMATION DATE,**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM, DEBT, OR LIABILITY AGAINST EITHER DEBTOR, THEIR ESTATES OR ANY OF THEIR RESPECTIVE PROPERTY, ARE AND SHALL BE ENJOINED AND BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE PLAN DOCUMENTS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST EITHER DEBTOR, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO EITHER DEBTOR OR THEIR ESTATES; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF EITHER DEBTOR OR THEIR ESTATES UNDER THE PLAN AND THE PLAN DOCUMENTS AND THE OTHER DOCUMENTS EXECUTED IN CONNECTION THEREWITH. THE POST-CONFIRMATION DEBTORS SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS GENERAL INJUNCTION PROVISION. THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 7.01 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.**

**7.02 *EXCULPATION*. FROM AND AFTER THE EFFECTIVE DATE, THE DEBTORS, THEIR CURRENT OFFICERS AND DIRECTORS, AND THEIR PROFESSIONALS (ACTING IN SUCH CAPACITY), (COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY WHATSOEVER TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY PERSON OR ENTITY , INCLUDING ANY HOLDER OF A CLAIM, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY GOOD FAITH ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASE, FORMULATING, NEGOTIATING, OR IMPLEMENTING THE PLAN, THE DISCLOSURE STATEMENT, ANY PLAN DOCUMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER**

AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THEREWITH, THE SOLICITATION OF ACCEPTANCES OF THIS PLAN, THE CONFIRMATION OF THIS PLAN, OR THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, PROVIDED, HOWEVER, THAT THE FOREGOING PROVISION SHALL NOT APPLY TO AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE RESULTED FROM FRAUD OR CONSTITUTED WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.  THE RIGHTS GRANTED UNDER THIS § 7.02 ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.  IN FURTHERANCE OF THE FOREGOING, THE EXCULPATED PARTIES SHALL HAVE THE FULLEST PROTECTION AFFORDED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE AND ALL APPLICABLE LAW FROM LIABILITY FOR VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCE OR REJECTION OF A PLAN.  ANY OF THE RELEASED PARTIES SHALL BE ENTITLED TO RELY, IN ALL RESPECTS, UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.  THIS EXCULPATION FROM LIABILITY PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 7.02 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY CAUSE OF ACTION

**7.03    *Barton Doctrine*.**  The "Barton Doctrine," *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article VII, and shall stand as one of the bases for enforcement of the provisions herein.  *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)("[j]oining the other circuits that have considered this issue, we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity"); *Patco Energy Express v. Lambros*, 2009 U.S. App. LEXIS 25771 (11th Cir. 2009) ("[w]here a plaintiff neglects to obtain leave from the appointing forum against a trustee, a suit filed [against a bankruptcy trustee] in another court must be dismissed for lack of subject matter jurisdiction"); *In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court).

**7.04** *Continuation of Automatic Stay.* The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date, and the Debtors, and the Estates shall be entitled to all of the protections afforded thereby. The Bankruptcy Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Assets of the Debtors and the Estates or to permit the just and orderly administration of the Estates.

**7.05** *Regulatory or Enforcement Actions.* Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. Nothing contained in this Article VII, Section 7.05 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

**7.06** *No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date, will be forever barred from asserting such Administrative Expense Claims against the Debtor(s), the Estate(s), or any of their respective Property.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

If a Proof of Claim is filed by any Creditor asserting a Claim for the same obligation which had previously been listed for such Creditor by the Debtor on the Schedules, then the Scheduled Claim shall be deemed a Disallowed Claim without the need for the Debtor or any party in interest to file an objection to such Scheduled Claim. The Claim asserted in the Proof of Claim shall be deemed to replace such Scheduled Claim and shall ultimately become an Allowed Claim, a Disputed Claim or a Disallowed Claim pursuant to the procedures set forth in this Plan.

Notwithstanding any other provisions of the Plan, no payments or distribution shall be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim. In lieu of Distributions under the Plan by a Debtor to Holders of Disputed Claims, a Disputed Claims Reserve shall be maintained by each Debtor for payment of any Disputed Claim which becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made as soon as is reasonably practicable following allowance of the Claim.

The Post-Confirmation Debtors shall have the authority to settle and resolve any Disputed Claim upon such terms and conditions as deemed appropriate and in the best interests of Creditors. Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Case. The Post-Confirmation Debtors shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest and shall not have any requirement to obtain Bankruptcy Court approval, in connection with compromising these Claims.

## ARTICLE IX
## PROVISIONS REGARDING DISTRIBUTIONS

**9.01   *Dates of Distributions.*** Holders of Allowed Claims in Classes 1-3 shall receive Distributions as soon as practicable after the Effective Date as described above in Article V. Holders of Allowed Claims in Class 4 shall receive Distributions within ninety (90) days after the Effective Date. Holders of Allowed Equity Interests shall receive Distributions once Holders of Allowed Claims in Class 1A – 4A or 1B – 4B, as applicable, and all Post-Confirmation Debtor Expenses are paid pursuant to Article V.

**9.02   *Interest on Claims.*** Except as expressly provided in a Final Order entered in the Case or as expressly provided in this Plan (a) no holder of any Unsecured Claim  shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**9.03   *Means of Payment.*** All payments made pursuant to the Plan shall be in Cash and by any means reasonably selected by the Post-Confirmation Debtors, including check or wire transfer.

**9.04   *Rounding.*** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**9.05   *Unclaimed Property.*** Unclaimed Property shall be held in an "Unpaid Claims Reserve" to be held for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of 90 days following the Distribution to Holders of Allowed Claims (said period being hereinafter referred to as the "**Claiming Period**"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof by such holder of its entitlement thereto. After the Claiming Period has expired, such Claim shall be treated as being disallowed, waived, and satisfied and any funds held in the Unpaid Claims Reserve shall be released back to the applicable Debtor and redistributed pursuant to the terms hereof.

**9.06   *Withholding Taxes.*** The Post-Confirmation Debtors shall be entitled to deduct any federal or state withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Post-Confirmation Debtors shall not be obligated to make any Distribution to any Creditor that has not provided requested tax identification information if such information is required to make a Distribution without withholding taxes from such creditor's Distribution. Holders of Allowed Claims that have not provided tax identification information will be solicited for such information on or before any

Distribution Date and included in the Distribution or in a subsequent Distribution once tax identification information is received from the holder.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1** ***Executory Contracts and Unexpired Leases.*** Any executory contract or unexpired lease to which either Debtor is a party that is not subject to an Asset Purchase Agreement and has not been assumed or rejected by such Debtor pursuant to a Final Order of the Bankruptcy Court as of the Effective Date (unless a motion to assume or reject such executory contract or unexpired lease is pending as of the Effective Date) shall be deemed rejected by the Debtor on the Effective Date. Notwithstanding anything to the contrary herein or in the Disclosure Statement, all insurance policies in force as of the Effective Date shall remain in effect following the Effective Date unless and until rejected by separate motion and/or terminated in accordance with their terms.

**10.2** ***Rejection Damage Claims.*** Claims arising from the rejection of any executory contracts or unexpired leases shall be filed within thirty (30) days following the rejection and shall be treated as Class 4A or 4B Claims, as applicable, to the extent Allowed. Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and shall be forever barred from asserting a Claim based on such rejection.

## ARTICLE XI
## MODIFICATION OF THE PLAN

The Debtors reserve the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation of the Plan. The Plan may be modified, without notice or hearing, or on such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing. In the event of modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Bankruptcy Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction, notwithstanding entry of the Confirmation Order and notwithstanding the occurrence of the Effective Date of the Plan, for the following purposes:

a)      to enforce all Causes of Action which exist on behalf of either Debtor, their Estates, or the Post-Confirmation Debtors pursuant to the provisions of this Plan or applicable law;

b)      to enter orders and injunctions and restraints to enforce the provisions of the Plan;

c)      to determine Claims asserted under Section 507(a)(2) of the Bankruptcy Code, including claims for compensation and reimbursement of expenses accruing prior to the Confirmation Date;

d)      to determine any Disputed Claims or disputes concerning the validity of or the market value of any collateral underlying any Secured Claim;

e)      to enter orders regarding interpretation, implementation, and enforcement of the Plan, or any document created in connection with the Plan;

f)      to conduct hearings and to enter orders modifying the Plan as provided herein or in the Bankruptcy Code;

g)      to determine any and all applications, Claims, adversary proceedings, contested or litigated matters pending on the Confirmation Date or filed prior to entry of a Final Decree;

h)      to determine any motions for rejection or assumption of executory contracts or unexpired leases, and to determine Claims resulting from rejection of executory contracts and unexpired leases;

i)      to allow, disallow, and estimate, liquidate, or determine any Claims against either Debtor, including Claims for tax liability, but excluding any Claims deemed allowed by this Plan, and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

j)      to enter orders required for the administration of the Plan, including, but not limited to:

    (i)      resolution of disputes pertaining to the amounts of payments under the Plan to Claimants;

    (ii)      conducting Postconfirmation valuation hearings as required by the Plan or authorized by the Bankruptcy Code; and

    (iii)      exercising jurisdiction over any other matter provided for or consistent with the provisions of Chapter 11 of the Bankruptcy Code.

- 25 -

## ARTICLE XIII
## CONDITIONS PRECEDENT TO CONFIRMATION

**13.01** *Conditions Precedent to Confirmation of the Plan.* Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtors and/or Post-Confirmation Debtors to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding the Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Plan Proponents.

**13.02** *Conditions Precedent to Effective Date*. The Effective Date will not occur and the Plan will not be consummated until:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(b) All requisite filings with governmental authorities and third parties shall have become effective, and all governmental authorities and third parties shall have approved or consented to the Plan, to the extent required.

(c) All documents contemplated by the Plan to be executed and delivered on or before the Effective Date shall have been executed and delivered.

(d) The Debtors shall have closed on the sale transactions contemplated by the asset purchase agreements attached as Exhibits 1A and 1B.

**13.03** *Waiver of Conditions Precedent*. Other than Section 13.02(a), each condition precedent in Section 13.02 may be waived or modified by the Plan Proponents without further Bankruptcy Court approval.

## ARTICLE XIV
## ACCEPTANCE OR REJECTION OF THE PLAN

**14.01** *Classes Entitled to Vote.* Holders of Allowed Claims in each impaired Class shall be entitled to vote to accept or reject the Plan. Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and Holders of Claims in such Classes shall not be entitled to vote to accept or reject the Plan.

**14.02** *Class Acceptance Requirement.* Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan.

**14.03   *Cramdown.*** The Debtors hereby request confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.

**14.04   *Claim Designation.*** The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Holder of any Claim whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

## ARTICLE XV
## MISCELLANEOUS

**15.01   *Objections to Claims.*** On and after the Effective Date, the Post-Confirmation Debtors shall have the exclusive right to make, file, prosecute, and resolve objections to Disputed Claims (whether scheduled or filed). All such objections shall be filed within ninety (90) days after the Effective Date ("**Claims Objection Deadline**"); however, extensions of this ninety (90) day period may be sought following Designated Notice. If a party in interest files a written objection with the Bankruptcy Court with respect to any proposed extension of time and serves a copy of said objection upon the party requesting the extension and his or her counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Bankruptcy Court shall schedule a hearing with respect to said objection and the deadline for the party requesting the extension to object to Claims as authorized under the Plan, shall be deemed extended through the conclusion of such hearing. If no objection is timely filed and served, the proposed extension shall be deemed granted without further authorization. The failure to object to any Claim prior to the commencement of the hearing on Confirmation of the Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of distribution. Notwithstanding anything to the contrary in this § 15.01, with respect to any proceeding brought by the Post-Confirmation Debtors to prosecute any Cause of Action retained by the Post-Confirmation Debtors, if any party in such proceeding is also the Holder of a Claim against the Debtors or their Estates, the Post-Confirmation Debtors shall be permitted to assert in such proceeding objections to the Claim of such party.

**15.02   *Compliance with Tax and Securities Law Requirements.*** In connection with the Plan, the Debtors will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements. The effectuation of this Plan shall be subject to compliance with all applicable state and federal securities laws.

**15.03   *Further Actions.*** Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Bankruptcy Court directing the Debtors, the Post-Confirmation Debtors and/or any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to affect any transfer and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of this Plan. Any transfer taxes arising from transfers of property ordered or made pursuant to this Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

**15.04   *U.S. Trustee's Fees.***   All fees due and owing under 28 U.S.C. § 1930 for periods through the Effective Date, to the extent not paid prior to the Effective Date, shall be paid by the Post-Confirmation Debtors as they become due.  Following the Effective Date, Post-Confirmation Debtors shall continue to pay timely all Chapter 11 quarterly fees as required by 28 U.S.C. § 1930(a)(6), until a Final Decree is entered or the Case is otherwise closed.

**15.05   *Governing Law.***   Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Georgia, without giving effect to the principles of conflicts of law thereof.

**15.06   *Severability.*** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**15.07   *Revocation.*** The Plan Proponents reserve the right to revoke and withdraw this Plan prior to Confirmation.

**15.08   *Effect of Withdrawal or Revocation.***   If the Plan Proponents revoke or withdraw this Plan prior to Confirmation, then this Plan shall be deemed null and void.

**15.09   *Closing the Case.***   The Post-Confirmation Debtors shall be authorized to apply to the Bankruptcy Court for authority to close these Cases at any time when the Plan has been substantially consummated or as otherwise appropriate.  Any Creditor or the Post-Confirmation Debtors may petition to reopen either Case at any time within the seven (7) year period immediately following the Effective Date of the Plan for the purpose of having the Bankruptcy Court interpret any provision of the Plan or enforce the rights of any party under the Plan or under the Bankruptcy Code.

**15.10   *Headings.*** Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

**15.11   *Extensions of Time.***   The time for the Debtors or the Post-Confirmation Debtors to take any action under this Plan may be extended by the Bankruptcy Court after notice and a hearing.

**15.12   *Designated Notice.***   Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken by the Post-Confirmation Debtors, Designated Notice shall be sufficient.  With respect to any proposed action to be taken as authorized under this Plan which may only be taken following Designated Notice, the following procedures shall apply.  After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Bankruptcy Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves

a copy of said objection upon the Debtors and/or the Post-Confirmation Debtors, as applicable, and their counsel, then the Bankruptcy Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action may only be taken if approved by Final Order of the Bankruptcy Court.  If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Bankruptcy Court.

## ARTICLE XVI
## REQUEST FOR CONFIRMATION

The Debtors, as Proponents of this Plan, request Confirmation of the Plan in accordance with Section 1129(a) of the Bankruptcy Code or, if any impaired class fails to accept the Plan, the Debtors reserve the right to request Confirmation in accordance with Section 1129(b) of the Bankruptcy Code.

**[Signatures on next page]**

This 15th day of December, 2025.

215 PAPER MILL RD PCPRE, LLC

By: _____ Randy Lawrence _____
Its: _____ Authorized Officer _____

1291 BRITAIN DRIVE PCPRE, LLC

By: _____ Randy Lawrence _____
Its: _____ Authorized Officer _____

SCROGGINS, WILLIAMSON & RAY, P.C.

/s/ Ashley R. Ray
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
J. HAYDEN KEPNER, JR.
Georgia Bar No.  416616
4401 Northside Parkway, Suite 230
Atlanta, GA 30327
(404) 893-3880

Counsel for the Debtors

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the attached **JOINT**

**PLAN OF LIQUIDATION** by causing it to be deposited in the United States Mail in a properly

addressed envelope with adequate postage affixed thereon to the following:

OFFICE OF THE UNITED STATES TRUSTEE
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

This 15th day of December, 2025.

4401 Northside Parkway                          Respectfully submitted,
Suite 230
Atlanta, GA 30327                               SCROGGINS, WILLIAMSON & RAY, P.C.
T:  (404) 893-3880
F:  (404) 893-3886
E:  aray@swlawfirm.com                          /s/ Ashley R. Ray
     hkepner@swlawfirm.com                      ASHLEY REYNOLDS RAY
                                                Georgia Bar No. 601559
                                                J. HAYDEN KEPNER, JR.
                                                Georgia Bar No.  416616

                                                Counsel for the Debtors